884 F.2d 1390
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dario LAM, Defendant-Appellant.
 No. 88-5637.
 United States Court of Appeals, Fourth Circuit.
 Submitted May 10, 1989.
Decided July 24, 1989.
 
 Thomas William Ullrich, for appellant.
 Bernard James Apperson, III, Office of the United States Attorney, for appellee.
 Before DONALD RUSSELL, CHAPMAN, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Dario Lam was convicted, after a jury trial, of possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). Lam's conviction came after an unsuccessful motion to suppress the drugs and an incriminating statement. On appeal, Lam challenges the district court's refusal to suppress the evidence and the statement. We find no error and affirm the denial of the motion to suppress and the conviction.
 
 
 2
 The pertinent facts as developed by the testimony offered at the suppression hearing, and viewed in the light most favorable to the government, are as follows. On April 26, 1988, at approximately 10:00 p.m., appellant, a casually dressed 20-year old native of Panama living in New York, arrived at Washington National Airport on a New York shuttle. Lam made eye contact with two females that had gotten off of the plane and were waiting for their luggage at the conveyor belt. This eye contact caught the attention of Michael C. Bernier, a narcotics detective and member of the Drug Enforcement Agency Task Force at National Airport. Lam then proceeded to the main terminal where, to Detective Bernier, he appeared to look back in the direction of the narcotics detectives and appeared nervous. Lam proceeded in the direction of some phones but did not use them. Thereafter Lam walked to an area containing seats with individual television sets and started watching television.
 
 
 3
 While Lam watched television the detectives satisfied themselves that the two females were not connected with Lam. After approximately 15 minutes Lam headed toward the exit where Detective Bernier and Detective Kozich were sitting. The exit was in a public area and there were other people around. When Lam was within 10 to 12 feet of the detectives, Bernier and Lam exchanged greetings. Bernier then stood up, presented his credentials, and asked to speak to Lam for a minute. Lam said "sure" and approached the detectives. During this encounter another detective stood next to Bernier and a third detective stood 30-40 feet behind Lam. Bernier asked Lam if he had just come off of a flight and Lam indicated that he had. Bernier asked Lam if he had a plane ticket with him; Lam replied that he had left it on the plane. In response to Bernier's request for some personal identification Lam gave him a photo identification card with a Maryland address; Lam informed the detectives, however, that he lived in New York. The detective returned the card.
 
 
 4
 At this point, Lam asked what this was all about. Bernier replied that he was part of a narcotics interdiction team at the airport and that his job was to intercept narcotics coming into the Washington area from source cities such as New York. Bernier then asked Lam if he were carrying any narcotics; Lam said "no." Bernier asked Lam if he were carrying narcotics on his person; Lam again stated "no." Bernier then asked Lam if he would mind if Bernier patted him down. At this point Lam lifted his shirt and showed his bare stomach. Bernier informed Lam that he could put his shirt down because Bernier only wanted to pat down his clothing. In response, Lam raised his hands out from his sides. Bernier instructed him to put his hands down and reiterated that he only wanted to pat down Lam's clothing; Lam replied "sure." In the ensuing pat-down search Bernier discovered the cocaine and placed Lam under arrest. At no time did Bernier inform Lam that he was free to refuse the pat-down and was free to leave.
 
 
 5
 At the police station, and subsequent to his being informed of his Miranda rights, Lam stated in response to a question from a law enforcement officer as to how many ounces there were, that there were "four." Throughout the entire encounter with Lam, the officers could not detect any problem with Lam's ability to understand the English language. In fact, Lam was specifically asked if he wanted to read his rights in Spanish, and he responded that he understood them.
 
 
 6
 Lam's testimony at the suppression hearing tracked the testimony of the detectives for the most part. Significantly, however, Lam testified that when Detective Bernier waved him over and identified himself as a police officer, Lam did not think he could leave. Lam also testified that his identification card was not returned and, instead of being asked if he would permit a pat down, he was told that he would be searched. Lam also felt that he was surrounded by the three detectives and was not free to go.
 
 
 7
 The government conceded below that there was neither probable cause nor an articulate suspicion to stop Lam. Instead, the government proceeded on the theory that the drugs were seized pursuant to a consensual search after a permissible police-citizen encounter.
 
 
 8
 After an evidentiary hearing on the motion to suppress, the district judge found that Lam understood every question that was asked of him; that the encounter between Lam and the law enforcement officers was a permissible police-citizen encounter, and not an arrest implicating the Fourth Amendment; there was no show of force, coercion, or display of weapons; and, finally, Lam's consent to be searched was voluntary. Additionally, the district judge found that Lam's statements were preceded by Miranda warnings, which Lam understood.
 
 
 9
 A district court's conclusion that a permissible encounter rather than a seizure has taken place is essentially a factual determination which must be upheld unless clearly erroneous. United States v. Gooding, 695 F.2d 78, 82 (4th Cir.1982). Similarly, whether a defendant's consent to search is voluntary is a factual question determined by the trier of fact in light of the totality of the circumstances and is binding on a reviewing court unless clearly erroneous. United States v. Peterson, 524 F.2d 167, 178 (4th Cir.1976), cert. denied, 423 U.S. 1088 (1976), citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Knowledge of the right to refuse to consent is not a prerequisite to a valid consent. Schneckloth, 412 U.S. at 248-49.
 
 
 10
 The Fourth Amendment is not violated when law enforcement officers merely approach an individual in a public place and ask him if he is willing to answer some questions. Florida v. Royer, 460 U.S. 491, 497 (1983). The mere fact that a detective identifies himself as a police officer does not, without more, convert the encounter into a seizure implicating the Fourth Amendment. Id. at 497. To the contrary, a person approached in this way may legally disregard the questions and walk away. United States v. Mendenhall, 446 U.S. 544, 554 (1980).
 
 
 11
 In Mendenhall, the Court analyzed the airport encounter under a "not free to leave" test. The Court focused on whether a reasonable person would, under the circumstances of the encounter, believe that he was free to terminate the interview and leave. The inquiry here, therefore, is whether the detectives did or said anything, before discovery of the cocaine, which would, objectively viewed, have caused Lam to believe that he was not free to leave. Although other reasonable inferences could have been drawn from the circumstances surrounding Lam's encounter with the agents, after viewing the totality of the circumstances as revealed by the testimony developed at the evidentiary hearing, we cannot conclude that the district judge's findings were clearly erroneous. We conclude that the non-coercive circumstances of the encounter between Lam and the agents support the district court's decision that Lam was not seized, and that Lam consented freely to the pat-down search of his person.
 
 
 12
 We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record and it would not significantly aid the decisional process. We affirm the district court's order denying Lam's motion to suppress the evidence seized and the statement, and we affirm the conviction.
 
 
 13
 AFFIRMED.